IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| HOWARD D. RAY, III, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-00984-CV-W-HFS |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

**I.      Procedural Background**

On June 7, 2002, plaintiff applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq., (Tr. 55-57), and on the same date plaintiff applied for supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq. (Tr. 221-23). In both applications plaintiff claimed a disability onset date of December 1, 2001 (Tr. 55, 221), and claimed a disability due to seizures, memory loss, and headaches. (Tr. 76). Plaintiff's applications were denied, and he timely requested a hearing. A hearing was held on January 5, 2004, and by a decision dated June 19, 2004, the Administrative Law Judge ("ALJ") determined that plaintiff suffered severe impairments including a history of seizures, cardiomyopathy[1], hypertension, hepatitis, and a history of alcohol dependence. (Tr. 18). However, the ALJ determined that the impairments did not meet or equal a listing, and that plaintiff retained the residual functional

---

[1] Any disorder or disease of the heart. *Dorland's Illustrated Medical Dictionary, 25th ed., pg. 264.*

capacity ("RFC") to perform the full range of light work. (Id). For the reasons set forth herein, the decision of the ALJ is affirmed.

## II.     Factual Background

The facts as set forth in the parties' briefs will be merely summarized here.

Plaintiff's Testimony

At the time of the hearing plaintiff was 51 years of age, and he possessed a high school diploma. (Tr. 227). After providing plaintiff with a review of the proceedings, the ALJ asked plaintiff's counsel if her intention was to take him to step 3 or step 5 of the disability analysis, counsel stated step 5. (Tr. 233-34).

Plaintiff testified that after initially experiencing headaches, he then suffers a mental loss. (Tr. 234) He last worked in 2001, but he has held temporary positions in 2002, as a caterer and laborer. (Tr. 234-36). Plaintiff complained of headaches, blurry vision, and trouble remembering things. (Tr. 236). He had his first seizure in December of 2001, and takes 7 to 8 medications, but could only remember the name of Dilantin. (Id). Plaintiff also takes medication for high blood pressure and stomach upset. (Tr. 237). He recalled having 2 seizures. (Id).

Prior to the first seizure, plaintiff was homeless, drank heavily, and smoked 3 to 4 packs of cigarettes a day. (Tr. 238). At the time of the hearing, plaintiff drank about 15 to 20 cans of beer a week, periodically he drank Hennessey and Coke. (Tr. 239). He explained that he stated on a questionnaire that he drank no alcohol because he did not consider beer to be alcohol. (Id). He had his last seizure in May of 2002, but he could not remember how much he drank at that time. (Tr.

2

239-40). Plaintiff experiences dizziness and headaches even when he does not drink. (Tr. 240). Plaintiff has lived with his aunt since 2001 or 2002. (Tr. 241). When he gets a headache it sometimes lasts all day, and he gets headaches 3 to 4 times a week. (Tr. 241-42). Plaintiff takes aspirin to relieve the headaches. (Tr. 242). During the day, plaintiff tinkers with his lawn mower, or visits his friend next door to play cards or dominoes. (Id). He also mops, washes dishes and cleans. (Tr. 242-43). He does not drive, and takes the bus for transportation. (Tr. 243). Plaintiff does not have problems with fatigue, but sometimes has problems with concentration. (Tr. 243-44).

When questioned by the ALJ, plaintiff explained that prior to the first seizure he drank about 2 half gallons of wine daily, he currently only drinks beer, and smokes about 1 pack of cigarettes a day. (Tr. 249-50). Plaintiff's treating physician, Dr. DeFaya, diagnosed plaintiff with hepatitis, but did not prescribe any treatment. (Tr. 250). After plaintiff's second seizure, he experienced several small seizures. (Tr. 250-51). Plaintiff takes medication for high blood pressure. (Tr. 251).

Medical Expert's Testimony

After reviewing the medical records submitted by plaintiff, medical expert, Dr. Hershel Goren, testified that the seizures experienced on December 13, 2001, and on August 29, 2002, did not meet the frequency requirement of listing 11.02. (Tr. 255). The other issue that could cause work place restrictions was cardiomyopathies, listing 4.08. (Id). However, although the results of one echocardiogram was abnormal, Dr. Goren felt it was due to plaintiff's high blood pressure which would be listing 4.03. (Tr. 256). After considering plaintiff's medical records, Dr. Goren opined that plaintiff did not meet or equal any listings, specifically listings 11.02 and 4.08. (Id). Dr. Goren further opined that if listing 12.09, alcohol ingestion, remained a problem, plaintiff would be unable

to work. (Id). As opposed to the large amount of alcohol previously ingested by plaintiff, Dr. Goren stated that drinking 15 cans of beer in a week would not affect plaintiff's ability to work. (Tr. 257).

Due to cardiomyopathy, Dr. Goren limited plaintiff to light levels of exertion, and the ability to lift or carry 20 pounds occasionally and 10 pounds frequently. (Id). There were no restrictions standing, walking, or sitting, but plaintiff should never climb a ladder, rope, or scaffold. (Id). Dr. Goren also opined that plaintiff should not move machinery, be at unprotected heights, and he should not drive. (Id).

Testimony of Linda Johnson

Plaintiff's aunt, Linda Johnson, testified that plaintiff was homeless, and in 2001, he came to live with her. (Tr. 259). Ms. Johnson witnessed the seizures suffered by plaintiff in December of 2001, and in May of 2002. (Id). She has also witnessed plaintiff have little seizures in which plaintiff blacks out; this occurs when plaintiff has not taken his medication. (Id). Ms. Johnson testified that plaintiff also had difficulty remembering to do things. (Tr. 260-61).

On a normal day, plaintiff cleans his room, washes the breakfast dishes, mops the floors and, watches television. (Tr. 263). Sometimes plaintiff visits a friend who lives around the corner and works on lawn mowers. (Id). According to Ms. Johnson, plaintiff had mental problems because he talks to himself. (Tr. 263-64).

When questioned by the ALJ, Ms. Johnson testified that she witnessed plaintiff have 6 mild seizures in 2003, lasting 2 to 3 seconds. (Tr. 265). Ms. Johnson also testified that plaintiff drank 15

to 20 beers in a week, and although he had no money to buy the beer, her son would buy it for him. (Tr. 266).[2]

Vocational Expert Testimony

After reviewing the record, the vocational expert testified that plaintiff worked with a number of temp agencies as a general laborer and forklift operator. (Tr. 268). Plaintiff explained that he loaded and unloaded trucks both by hand and with a forklift. (Tr. 269). The vocational expert testified that plaintiff's work as a material handler was heavy, unskilled work. (Id).

The ALJ asked the vocational expert to assume a 51 year old man, with a high school education, who can perform the full range of light work, with the exception that memory problems due to alcohol addiction would reduce his ability. Therefore, the individual required work in a low stress, noncomplex routine with no fixed quotas; no supervisory responsibilities; limited contact with the consuming public; no driving motorized vehicles; no working at unprotected heights or working around dangerous machinery deu to seizures. (Tr. 270).

The vocational expert opined that such an individual would not be able to perform past work as a forklift operator or material handler because he would have to lift in excess of 20 pounds and might have to climb ladders. (Id). However, such an individual would be able to work as a small parts assembler of which there were 2500 jobs in Missouri and 85,000 nationally; a laundry folder of which there were 1,100 in Missouri and 51,000 nationally; a duplicating machine operator of which there were 200 in Missouri and 10,200 nationally. (Tr. 271).

---

[2]The son's testimony might have been helpful, if limited drinking was to be credibly asserted.

5

**III.    Standard of Review**

On review, this court must determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Craig v. Apfel, 212 F.3d 433, 435 (8th Cir. 2000). Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion. Id. In considering whether existing evidence is substantial, evidence that detracts from the Commissioner's decision as well as evidence that supports it must be considered. Craig, at 436. The Commissioner's decision may not be reversed merely because substantial evidence exists in the record that would have supported a contrary outcome. Id.


**IV.    Analysis**

Plaintiff claims that the RFC as determined by the ALJ fails to be supported by substantial evidence on the record as a whole. Specifically, plaintiff contends that the ALJ: (1) did not properly consider the testimony provided by Ms. Johnson, (2) did not properly evaluate plaintiff's pain, (3) did not properly consider the combined effects of his impairments, and (4) did not properly consider whether plaintiff could engage in sustained employment. Plaintiff also contends that the hypothetical posed to the vocational expert was defective because it did not include functional restrictions imposed by his pain.

The ALJ engaged in the 5 step sequential analysis, and at step 1 found that plaintiff had not engaged in substantial work activity from the alleged onset date of disability. (Tr. 13). At step 2, the ALJ determined that plaintiff suffered from severe impairments, but concluded at step 3 that the impairments did not singly or in combination equal or meet a listing. (Tr. 13-14). At step 4, the ALJ determined that plaintiff could not perform his past relevant work, however, at step 5, the ALJ found

that plaintiff could perform work which existed in significant numbers, and was, therefore, not disabled.

Credibility Determination

Plaintiff finds fault with the ALJ's credibility finding, however, an ALJ's credibility determinations are entitled to considerable weight. Hamilton v. Barnhart, 355 F.Supp.2d 991, 1002 (E.D.Mo. 2005); see also, Sanchez-Wentz v. Barnhart, 216 F.Supp.2d 967, 973 (D.Neb. 2002). Although subjective complaints of pain may be discredited if inconsistent with the evidence on the record as a whole, such complaints may not be disregarded solely because of a lack of objective medical evidence. Hamilton, at 1002. In making a credibility finding regarding subjective allegations of pain, the ALJ is required to consider observations by third parties and treating and examining physicians relating to the plaintiff's daily activities; the duration, frequency, and intensity of pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication, and functional restrictions. Hamilton, at 1002; citing, Polaski v. Heckler, 739 F.2d 1320, (8th Cir. 1984). The plaintiff's "relevant work history" is an additional factor to be considered. Sanchez-Wentz, 216 F.Supp.2d at 974.

In this case, the ALJ noted plaintiff's sporadic work history with below average earnings. (Tr. 16). It has been held that a poor work history can be indicative of a lack of motivation to work rather than a lack of ability. Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). The ALJ also discounted plaintiff's allegations of pain due to his daily activities consisting of watching television, visiting a neighbor, playing cards and dominoes and light housework. (Tr. 14-15). Although standing

7

alone, these activities do not provide a sufficient basis upon which to declare plaintiff fit for work, when considered in light of other evidence presented, plaintiff's allegations of debilitating pain are less than credible. Hamilton, at 1003. Moreover, while plaintiff complained of experiencing headaches 4 times a week which lasted all day, seizures, blurred vision, hypertension, and dizziness, the medical evidence is insufficient to show that the alleged pain is of such significance that plaintiff cannot engage in substantial gainful activity. Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) (the mere fact that working may cause pain or discomfort does not mandate a finding of disability); see also, Sanchez-Wentz, 216 F.Supp.2d at 977 (the real issue is how severe that pain is).

On December 13, 2001, plaintiff had a seizure. (Tr. 150). Upon admittance to the hospital, medical notes indicate that plaintiff had a history of Hepatitis B and C[3], and that he smoked a pack of cigarettes daily for many years and drank whiskey. (Id). A cat scan revealed an old left frontal infarct[4], but no acute bleeding. (Tr. 151). Plaintiff was given Dilantin and placed on seizure precautions. (Id). During a follow up visit on January 10, 2002, it was noted that the prior seizure was presumed to be secondary to alcohol withdrawal... chronic long-term use of ½ gallon of gin daily. (Tr. 149).

Physical examinations for the next several months revealed that plaintiff had acute bronchitis and high blood pressure. On May 25, 2002, plaintiff presented complaining of a seizure, and since his Dilantin level was sub-therapeutic, the seizure was presumed to be related to non-compliance with Dilantin, or secondary to alcohol withdrawal. (Tr. 205). There was some concern of a new

---

[3]Medical notes dated November 7, 2001, indicate fatty infiltration to the liver; the spleen, gallbladder, and kidneys appeared normal. (Tr. 158).

[4]An area of necrosis in a tissue produced by sudden arrest of circulation in a vessel. *Dorland's,* at 778.

8

cereborvascular event, but a cat scan of the head was negative. (Id). Due to alcohol abuse, the attending physician decided to institute alcohol withdrawal precautions. (Tr. 206).

During a physical examination on March 27, 2003, plaintiff complained of dizzy spells. (Tr. 197). His physician, Dr. Frederick G. Defeo, noted that plaintiff drank 2 six packs of beer daily, in addition to 1/5 to ½ bottle of Wild Irish Rose wine, and stated that hangovers and dizziness were common. (Id). On June 26, 2003, plaintiff was advised about smoking and alcohol cessation. (Tr. 194). During a medical exam on July 24, 2003, plaintiff reported 2 black-outs, and that he decreased his smoking and drinking; his hypertension was reported as stable. (Tr. 192). Medical notes on August 29, 2003, revealed the physician's belief that plaintiff's lack of concentration was secondary to lengthy alcohol abuse, and that plaintiff continued to drink; alcohol was detected on plaintiff's breath during that visit. (Tr. 185-86). Medical notes on November 10, 2003, revealed that a cat scan performed in September showed no acute changes, only an old left frontal CVA. (Tr. 175). Plaintiff's headaches were most likely tension headaches, and continued use of aspirin was recommended. (Id). Plaintiff was advised to stop or decrease smoking and drinking. (Id). During a visit on December 16, 2003, plaintiff complained of headaches, but stated that it could be from his alcohol intake. (Tr. 171).

In considering the duration, frequency, and intensity of pain, the medical evidence does not indicate any treatment for plaintiff's alleged hepatitis condition, and only aspirin was suggested for his headaches. Nevertheless, plaintiff was repeatedly admonished to decrease or curtail his smoking and drinking. In fact, the precipitating and aggravating factors noted, as it related to plaintiff's seizures, consistently pointed to plaintiff's abuse of alcohol.

9

The ALJ also discounted the testimony of plaintiff's aunt, as cumulative of the allegations set forth by plaintiff during his testimony. I agree. After having discredited the plaintiff's testimony regarding the extent of his pain, the ALJ may properly discredit cumulative testimony provided by other witnesses. Sanchez-Wentz, 216 F.Supp.2d at 977.

In view of the above, there is substantial evidence on the record as a whole to support the ALJ's determination discrediting plaintiff's allegations of pain.

Residual Functional Capacity

Plaintiff also complains that the ALJ failed to consider the combined effects of his impairments in determining his RFC. The RFC "is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Hamilton, 355 F.Supp.2d at 1005. The determination of the RFC is a medical issue, which requires the consideration of supporting evidence from a medical professional. Id.

In addition to the medical reports noted above, the ALJ considered the testimony of medical expert, Dr. Goren, who noted plaintiff's diagnoses of seizures, cardiomyopathy, and hypertension. (Tr. 13, 255-56). Dr. Goren also noted that plaintiff's alcohol ingestion, i.e. a gallon a day, if continued, could be disabling; but if plaintiff drank only 15 cans of beer a week, it would not affect his ability to work. (Tr. 13, 256-57). Dr. Goren opined that plaintiff should not lift more than 20 pounds occasionally, and 10 pounds frequently, and that there were no restrictions on standing, walking, sitting, or hand and foot controls. (Tr. 257). However, plaintiff should never use a ladder, rope, or scaffold, or move machinery or drive. (Id). Dr. Goren repeated these findings in a Physical-RFC completed on April 5, 2004. (Tr. 214-17). In a Mental-RFC completed on the same day, Dr.

10

Goren repeated his opinion that continued alcohol abuse would prevent plaintiff from working, but did not express an opinion on plaintiff's mental state because his comments were made when plaintiff was drinking. (Tr. 218-20). The record indicates that these findings were sent to plaintiff's attorney on April 23, 2004, for any comments or objections, but no response was received and the case was forwarded to the ALJ for further processing. (Tr. 124).

An ALJ is only required to consider impairments he finds credible and supported by substantial evidence in determining the plaintiff's RFC. Hamilton, at 1006. Here, in making his RFC determination, the ALJ relied on the evidence he found credible and relevant in the record as a whole. Hamilton, at 1007. The RFC is essentially comprised of the same restrictions as Dr. Goren's assessment; thus, supported by authority and the evidence of record. Id.

Plaintiff also claims that the hypothetical posed to the vocational expert was defective because it failed to include functional restrictions imposed by his allegations of pain. "A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true." Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Here, the ALJ properly included in the hypothetical only those limitations supported by the record as a whole. Goff, at 794. These limitations included memory problems presumably due to the alcohol addiction; a need to work in a low stress, non-complex routine with no fixed quotas or supervisory responsibilities. (Tr. 270). Also included in the hypothetical was limited contact with the consuming public, and no working at unprotected heights or around moving machinery or driving of motorized vehicles. (Id). As such, the ALJ's hypothetical was proper, and the vocational expert's testimony based on a properly phrased hypothetical question constituted substantial evidence. Goff, at 794.

11

Alcohol-Related Claim

For the first time, in his reply brief, plaintiff claims that while the ALJ made reference to his alcohol abuse, he failed to consider whether plaintiff's impairments would be disabling in the absence of alcohol. The Social Security Act proscribes considering a person disabled if alcohol or drug abuse would be "a contributing factor material to the Commissioner's determination that the individual is disabled." Fastner v. Barnhart, 324 F.3d 981, 984 (8th Cir. 2003) (the relevant inquiry is whether the claimant would still be disabled if he or she stopped using drugs or alcohol); citing, 42 U.S.C. § 423(d)(2)( C ).

Here, in his findings, the ALJ followed the 5 step analysis, taking into consideration plaintiff's alcohol dependence in determining his severe impairments, his RFC, and whether there was work for plaintiff in the national economy. Fastner, at 985. In determining plaintiff's RFC, the ALJ noted that because of his alcohol addiction his memory was reduced, and he should therefore work in a low stress, routine environment (Tr. 270). Yet, at the conclusion of the analysis, the ALJ determined that plaintiff could perform the full range of light work in jobs which existed in the state and national economies. Upon making this determination, it was unnecessary to evaluate what role, if any, alcohol abuse played. Fastner, at 986. For, generally, a determination under § 423(d)(2)( C ) is only necessary if the ALJ has found that the sum of the impairments would otherwise amount to a finding of disability. Id.; see also, Brueggemann v. Barnhart, 348 F.3d 689, 694 (8th Cir. 2003) (the plain text of the relevant regulation requires the ALJ first to determine whether the claimant is disabled).

Under the evidence of record at bar, upon finding plaintiff able to perform work, an alcohol/drug disability analysis would have been superfluous. Fastner, at 986. In the alternative, if

12

there were to be a finding of disability associated with alcoholism, there is an insufficient showing of hypothetical disability continuing despite a sober life-style.

Accordingly, it is hereby

ORDERED that plaintiff's request for judgment is DENIED, and the decision of the Commissioner of Social Security is AFFIRMED. The clerk of the court is directed to enter judgment in favor of defendant.

/s/ Howard F. Sachs  
HOWARD F. SACHS  
UNITED STATES DISTRICT JUDGE

September 15, 2006

Kansas City, Missouri